Opinion of the court delivered by
Judge Whyte.
On the 9th December 1823, in the court of chancery for the third judicial circuit, Jacob Robertson, William Dyer and others, complainants, had a decree rendered in their favor, for the sum of $529 52, with interest from the 1st of *436 January 1818, against George Sutherland and James Campbell; from which decree the said defendants, Sutherland and M’Campbell, prayed an appeal to next supreme court of errors and appeals at Sparta, for the third judicial circuit, and entered into bond with P. M. Miller their security, with a condition, “that if the said M’Campbell and Sutherland shall well and truly prosecute their appeal with effect^ or in case they fail therein, then well and trulypay and satisfy the decree of said chancery court, or should the same be dismissed by said supreme court, or discontinued for want of prosecution, or be decided against them, then well and truly pay and satisfy the decree of the said chancery court, with all such costs and damages as may be awarded and decreed against them by said supreme court; then shall the above obligation be null and void, otherwise be and remain in full force and virtue. (Signed,) James M’Campbell, seal. George Sutherland, by P. M. Miller, Attorney seal. P. M. Miller, seal.
On the Ilth day of September 1830, this decree and cause in which it was rendered, came on in the supreme court to be heard, examined and revised, (before Peck and Whyte Judges) upon the appeal from the court of chan-dlery; whereupon the court thought fit and did accordingly order, adjudge and decree, that the judgment, order and'decree of the court below, be in all things affirmed; and that the defendants, together with P. M. Miller, their security upon the appeal, pay the complainants the said sum in said decree of ‡529 52, with interest from the 1st day of January 1818, amounting up to this day to $932 35, and the 'defendants and their security P. M. Miller, pay the costs of this suit, and that execution issue as upon judgment at law.”
Upon this decree of the supreme court an execution was issued against Miller, the security in the appeal bond, who applied by petition to the judges of the supreme court, who rendered the decree, for a supersedeas, suggesting, that the decree of the supreme court had been rendered improvide as against him, that he was not before the supreme court at the rendering that decree, nor a *437 party in the cause, that his liability by the appeal bond was not primary, and direct, hut collateral, and contingent, liable to be called upon, he admits, but not by suit then before the court; and to be answerable for consequences; but not upon that process, but upon another and a new suit, and upon another process directed to him personally, upon which he could render his appearance, make his defence, and be heard before he should be condemned.
Upon this petition, the two judges granted their fiat tor a supersedeas to issue, which has issued, and now upon its return, it is moved on the part of Miller, that the execution, as to him, may be quashed, and the decree as rendered against him, be considered inoperative and void, because not before the court, either actually or potentially.
When this cause of Ward, Robinson and others was heard upon appeal in September 1830, the objection now taken to the jurisdiction of the court, of Miller’s not being a party, and not being before the court, was not taken; it was not mentioned at the bar, neither did it occur to the court, but was passed over sub silentio. The court being now regularly called upon for a judicial decision upon the premises, will proceed to deliver the same.
If the decree complained of, rendered against Miller, is sustainable, it must be so on one of these two grounds either by the common law, or by statute.
By the common law Miller is no party either in the original suit of Robertson, Dyer and others vs. Sutherland and M’Campbell, or in the appeal in the same suit in this court. In the original suit, Sutherland and M’Campbell were the only party defendants, process was only prayed against them and the decree could be only against them; Miller is a stranger to that record, his name is not mentioned in it. See Fawks vs. Pratt, 1 Peare Williams 593.
Neither is Miller party in the appeal. The appeal is not prayed by him, nor is it granted to him, or taken by him, but prayed, granted to, and taken by Sutherland and M’Campbell, as the record shows; neither could he be a *438 party, for he is a stranger to the suit; being neither par- ^ nor priVy to the record, he is only security or hail on the appeal,— a connexion or relation by the appeal bond not being a direct connexion or relation, but collateral in its being external, and without the nature and essence of the matter of the suit. See 1 J. L. D. 498. Mr. Miller’s connexion with the recordon the appeal being only collateral, a decree could not be rendered against him to render judgment against him by virtue of his liability on the appeal bond as security, or bail in appeal, required a proceeding for that particular purpose; a proceeding differing from that against the parties to the suit: and which is prescribed by the law: for every man’s liability is to be enforced against him by a proper record, adapted by the law to his particular case. Thus by the common law on a writ of error it is held, that the judgment against the principal is a distinct judgment from that against the bail, and a judgment against the bail distinct from that against the principal: and that the principal and bail cannot join in a writ of error. It is not therefore in the nature of judicial proceeding by the common law, that the same judgment can be rendered against the principal and against the bail. Tidd’s Practice 1053, and authorities there cited.
A judgment or decree could not, therefore, be rendered by this court upon the appeal of Sutherland and M’Campbell against their bail or security in the appeal bond, Miller, by the rule of the common law, for he had no opportunity for appearing; and if in point 'of fact he had appeared, he could not have been heard in defence, and without such appearance, no judgment or decree could, at the common law, be given against him, 13 Ves. 565, O’Gilvie vs. Flearne.
It will, 2dly, be next examined, whether the decree or judgment rendered against Miller by this court in 1830, be sustainable by statute. It seems to be admitted, on argument, that on appeals in equity from a chancery jurisdiction previous to the making the 5th and 7th rules “adopted by the judges of the supreme court for the regu *439 lation of the practice in chancery in 1822, Peck’s Rep. 22, no bond and security were required upon the granting the appeal, hut that those rules, with the act of Assembly of 1822, ch. 14, sec. 7, passed the 23d August 1822, adopting them, operated upon the appeal in this case, which was prayed and granted the 16th December 1823, that this operation made the security to the appeal a party to the suit, and authorized in the case of an affir-mance, or when money is decreed to be paid, or decree against the security conj ointly with the appellants for the money recovered or decreed, with damages and costs, and therefore, it is insisted by the counsel for Robertson and Ward, that the decree of the supreme court of Sept. 1830, affirming the decree of the court of chancery below of the 16th Dec. 1823, against the appellants, Sutherland and M’Campbell, and their security, P. M. Miller, was a valid decree, as well against Miller as against the appellants. A question was made at the bar respecting the power of the judges of the supreme court at the time to make these rules, but it is not necessary to examine it, as the act of Assembly afterwards, and before the taking the appeal in this case, recognized their existence, and directed them to be in force. Upon these rules the question then is, the extent of their operation in support of the decree of the supreme court of 1830, against Miller, the security in the appeal bond. These rules authorize an appeal from the courts of chancery; they authorize the taking bond with security; they authorize and sanction the liability of that security or bail in the cause of a non-prosecution with effect, or in the cause of non-payment of the money that may be decreed, to the payment of that money, together with all damages and costs that the appellees may sustain by reason of such wrongful appeal, But they do not authorize the supreme court to force their liability in and by the decree rendered by it in the suit upon the appeal,and to give a conjoint judgmentand decree against the appellants, the parties in the suit and their securityinthe appeal bond, they say nothing like this, they give and establish a liability upon appeals in equity, *440 which was no where given before, a legal right, firmly jegaj? evidenced by bond, the proper forum of which is as decisively acourt of law, and not a court of equity, unless it is affected by such equitable matter as will change the jurisdiction, leaving the remedy for that legal right as before, according to law and the forms established m cases of the like nature, that is, to a direct proceeding against the security or bail in the appeal bond.
The act of 1817, ch.-119, sec. 1 and 2, establishes the above principles in the notice it takes of injunction bonds, and the course it pursues in regard to them. It directs “that when any injunction shall be obtained to stay the collection of money on a judgment in any of the courts of this State, and the same shall be dissolved on motion, or' on final hearing of the case, it shall be the duty of the clerk of the court in which the injunction shall be dissolved, or final decree rendered, to enter up judgment against the party obtaining the same, and his securities, for the amount of the principal, interests and costs, for which execution shall issue.” Now the bond given for the obtaining an injunction is of the same nature as the appeal bond in a suit in equity. In the condition of the bond the security undertakes that the plaintiff or complainant shall prosecute his suit with effect, or if he fail to do so, or if the injunction is dissolved or final decree is rendered against his principal, he will pay the amount of the judgment complained of, so enjoined, with interest and costs. Now if judgment or decree could have been rendered before the passing of this act, on the final decree, as well against the security as the party, that is a conjoint judgment against both, why pass this act? The act therefore, recognizes and establishes all these principles, that the liability created by bond is a legal liability,— the proper subject of jurisdiction of a court of law and not of a court of equity. That by the common law no judgment can be rendered against any one but on a proper proceeding where he may have notice to appear and defend himself; and that to dispense with this rule of the common law requires the power of a statute; and that *441 before the passing of this statute no such judgment could be rendered as the one authorized and prescribed by it, thatis,a joint; judgment against the party in the cause, and one who is not a party, but collaterally connected with it. The two cases in the second section of this act, certiorari bonds and appeal bonds, though seemingly of less apparent hardship, are examples supporting and elucidating the same principles. They prove that it demanded the power of a statute to oust the security of his common law protection of notice, and subjects him to a new proceeding equally rigorous in its practice and unjustifiable in its principle.
These sections of 1817, ch. 119, abridge the rights oí the citizen, and stand in our statute book regretted instances of the infractions of the rule of the common law, for the preservation of our rights; and it is to be lamented that they are not the only ones. They are preceded by numerousothers of a similar character. This course of legislation was first introduced under the plea of necessity; that public poli-cy imperiously required it for the support of government and the maintenance of the social compact, the existence of which could not be proion ged without its aid, in reference to public debtor, and treasury delinque nt. And i* was assumed as a dictum, that without the power of taking judgment against fiscal delinquents, government would be dissolved, and interminable embarrassment and confusion would and must ensue. But as in morals, one deviation from the rule of right, paves the way for a second; so this principle of legislation soon assumed a broader field for its exercise, and was extended to the public officers, and collectors of the moneys of private individuals; and lastly, still more extended so as to embrace the claims of individuals inter se, or debtor and creditor, unconnected with any public office or trust.
In the noticing this much to be regretted course of legislation, I speak of it as far as it respects private individuals only, and when the public treasury is not concerned; it is to be remarked that one consolation presents itself; *442 to the act , or instances therein specified. that judicial construction confines its purview its operation strictly to the cases
But this course of legislation was soon checked after the date of its greatest and ultimate extension by the 199th chapter of the act of 1817. In the 3rd section of this chapter the legislature seem to have abandoned the course of legislation above noticed, of authorizing judgments tobe rendered without notice, and as seemingly retracing their steps, have enacted, “That it shall and may be lawful for judges of the supreme court of errors and appeals to exercise jurisdiction and grant judgments upon all bonds or recognizances which may be taken by the clerks of said courts, or in any circuit court and removed to said court, either for the prosecution of suits, or bonds executed agreeably to any order of said court, or of any judge granting an injunction, or bonds of any other kind which are by law directed to be executed by any party or parties in the process of any cause, and deposited in said court: and such process of scire facias may in all such cases be issued as is proper in similar cases in a court of law; and if any defendant or defendants shall appear and plead to such a scire facias, and an issue should be joined, it may be lawful for such court to order a jury to be forthwith summoned for the finding said issue, upon which said court may proceed to judgment as in other cases.”
Thus this act of 1817, ch. 199, sec. 3, has restored the common law proceeding upon all the species of bonds enumerated and described therein, comprising all bonds appertaining to the administration of justice in the courts, whether taken in or out of court, if deposited in the supreme court, by giving the judges thereof jurisdiction of them, and directing the process of scire facias to issue upon them, to which the defendants may appear and plead, and if issue is joined a jury trial is to be had; thus restoring the right of having notice, of making defence, and of taking the benefit of a real and substantial trial, in the place of a sham or nominal one.
The present bond given by Miller as security on an *443 appeal bond in the court of chancery, comes both within the letter and spirit of this act. It is a bond directed law (by the rules 5 and 7 of 1822, and the act of 1822, ch. 14, sec. 7,) to be executed by the parties in the process of a cause, and it is deposited in the supreme court. The judges of the supreme court, under the provisions of this act, had jurisdiction of this bond to enforce Miller’s liability, and it is according to his understanding thereby. But this jurisdiction was to be exercised by them upon the common law proceeding of scire facias, not upon the suit in which the appeal was taken, by the direct judgment and decree upon the merits, against the parties to that suit, the appellants, by pronouncing the said decree against Miller also; but by another judgment in another suit, brought by another process, where he would have had the full benefit of notice, defence and trial before the rendition of judgment against him. As it is, he has had none of these benefits; he had no appearance or right of appearance; nor was he eitherjn fact or in contemplation of law, present, or before the coart. The court, therefore, had no jurisdiction of his person, and consequently the judgment rendered against him is null and void.
Let the execution be quashed.